COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Malveaux, Ortiz and Friedman
Argued by videoconference


PATRICK M. BARNES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0930-22-1              JUDGE MARY BENNETT MALVEAUX
                                                    NOVEMBER 8, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

    Daymen Robinson for appellant.

    Victoria Johnson, Assistant Attorney General (Jason S. Miyares,
    Attorney General, on brief), for appellee.


        Patrick M. Barnes ("appellant") appeals his convictions, following a jury trial, for

second-degree murder, in violation of Code § 18.2-32, abduction, in violation of Code § 18.2-47,

and two counts of use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.[1]

On appeal, appellant asserts that the evidence was insufficient to prove he was one of the

perpetrators. He further asserts that the trial court erred when it refused his proffered jury

instruction concerning eyewitness testimony.[2] For the following reasons, we disagree and affirm

the convictions.

_____

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

        [1] The jury acquitted appellant of conspiracy to commit second-degree murder and
conspiracy to commit abduction.

        [2] On brief, appellant withdraws his third assignment of error as it relates to refused Jury
Instruction A.

## I. BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

After midnight on March 30, 2019, Anthony Beach was working as a security guard at Murphy's Law Pub. As he surveyed the alley between the pub and a neighboring restaurant, Mona Lisa's, he noticed "an altercation break out" in front of Mona Lisa's. He informed a co-worker that a fight was about to occur and went back inside.

James Kirksey was working as Mona Lisa's front door security in the early morning hours of March 30, 2019. That evening he was wearing a black hat, black shirt, and camouflage jacket. While surveying the alley, he observed three individuals beating Elijah Craven and noticed a gun pointed at Craven's abdomen.[3] Kirksey noted that one of the individuals surrounding Craven had braids and wore a red, white, and blue jacket. As Kirksey entered Mona Lisa's to report the incident to his boss, patrons rushed past him yelling that Craven was "getting jumped." Michael McGregor ran past Kirksey and out of the restaurant.[4] Kirksey testified that he knew McGregor through his family and knew Craven as a Mona Lisa's patron. Kirksey testified that Craven and McGregor were friends.

---

[3] Several witnesses knew Craven as "Gualla" and referred to him as Gualla during their testimony.

[4] Several witnesses knew McGregor as "Puddy" and referred to him as Puddy during their testimony.

Meanwhile, Beach monitored the altercation on Murphy's Law Pub's exterior security cameras. When Beach next opened the pub door to admit new patrons, he observed appellant with his arm around Craven and a gun pointed at Craven's abdomen. Beach recognized appellant and Craven because earlier he had denied both of them entry to Murphy's Law Pub as the pub was at capacity. Appellant was wearing a long sleeve camouflage shirt with lettering across the front. While patting down a patron, and watching the altercation outside on the security monitor, Beach observed multiple people surround Craven and pull him to the parking lot behind Murphy's Law Pub. When Beach finished searching the patron, he opened the exterior door and immediately heard "multiple shots" coming from behind the building. After several minutes passed without gunfire, Beach approached the back parking lot and found McGregor on the ground and bleeding from his head. First responders pronounced McGregor dead at the scene. On cross-examination, both Beach and Kirksey admitted that they were convicted felons.

Craven remained at the scene until investigators arrived. He was photographed that evening wearing a red, white, and black jacket with jeans.

Detectives Jemal Davis, John O'Keefe, and Lance Roberson testified that they examined footage of the incident from Murphy's Law Pub and Mona Lisa's as well as enhanced versions of that footage multiple times.[5] The detectives identified appellant, Dashawn Bryant ("Bryant"), and Gary Drew ("Drew") as members of the group of four who dragged Craven to the back parking lot. Detectives O'Keefe and Roberson were familiar with appellant, Bryant, and Drew through their duties as patrol officers and often saw them together in the Five Points neighborhood. The detectives, however, were unable to identify the fourth individual because there was no clear view of his face in the videos.

---

[5] The enhanced versions utilized software to brighten the existing image.

Video footage from cameras at Mona Lisa's and Murphy's Law Pub was shown to the jury. Mona Lisa's video footage depicted both appellant and Bryant inside the restaurant just before the shooting. Detective O'Keefe identified appellant as the stockier man wearing a camouflage shirt with white lettering on the front, dark pants, and a gold chain. The detective identified Bryant as the short-haired man in the dark green jacket, black shirt, black jeans, and white shoes.

In the Murphy's Law Pub video, Detective Davis identified Drew as the man with braids and dressed in jeans, a cap, and a red, white, and blue jacket. In the video, Drew approached appellant and Bryant in the alley between Murphy's Law Pub and Mona Lisa's just after midnight on March 30. Then several individuals began scuffling just off camera in front of Mona Lisa's. As the fight moved into the camera's frame, four men surrounded Craven and dragged him behind Murphy's Law Pub. Detective Davis identified Craven as the man in the middle of appellant, Bryant, and Drew. Bryant held Craven while the others pushed him to the back parking lot.

The video showed that as the group turned the corner to the back parking lot, McGregor raced down the alley in pursuit. Contemporaneously, the group entered the rear security camera's view and numerous flashes discharged. McGregor fell to the ground, and an individual crouched and skirted around the vehicle near McGregor. Once parallel with McGregor, the individual raised a gun and fired two gunshots into McGregor's head. After identifying each individual and tracking their progress on the video, the detectives determined that appellant was the assailant who fired the final two gunshots at McGregor.

On cross-examination, the detectives acknowledged that they could not identify anyone in the unenhanced footage at the time of the actual shots. Furthermore, they acknowledged that their identification of appellant as the individual in the final part of the shooting was based on the "culmination of all of the video," his height, his build, and his clothing.

At trial, appellant offered Jury Instruction B, which specifically instructed the jury on evaluating eyewitness testimony. Appellant claimed that, because the only evidence tying him to the crimes was eyewitness testimony, his proposed instruction was critical to his case and germane to the jury's fact-finding mission. The trial court refused Instruction B noting that "it's covered by other instructions."

The jury convicted appellant of second-degree murder, abduction, and two counts of use of a firearm in the commission of a felony. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant asserts that the evidence was insufficient to prove beyond a reasonable doubt that he was one of the individuals who abducted Craven and shot McGregor.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). Furthermore, we defer "to the [fact finder]'s interpretation of all of the evidence, including video evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). At trial, the jury "views video and other evidence to determine [the facts]." *Id.* On appeal, we "view video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the [jury] did." *Id.*

Appellant argues that any identification of him as one of the culprits was unreliable, asserting that the eyewitnesses were never able to identify him as being involved in McGregor's shooting or as the shooter. Additionally, appellant claims that law enforcement's identification of him was speculative as it was based upon poor quality video footage that had no sound.

Although appellant contends that the eyewitness identification was unreliable, the jury was able to assess the credibility of that identification by comparing appellant's appearance during that evening, as well as in court, to that of the perpetrators in the video footage. We

conclude that the jury, having viewed the video evidence, reasonably could determine that the video footage corroborated Beach's, Kirksey's, and law enforcement's identification testimony, based on the similarities in the clothing, height, and build of appellant and the perpetrator. Viewed as a whole, the Commonwealth's evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant abducted Craven and shot McGregor.

## B. Refused Jury Instruction

Appellant contends that the trial court erred when it rejected his proposed instruction on the jury's consideration of eyewitness identification testimony.

We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion. *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). Moreover, a jury instruction "may not 'single out for emphasis a part of the evidence tending to establish a particular fact.'" *Terry v. Commonwealth*, 5 Va. App. 167, 170 (1987) (quoting *Woods v. Commonwealth*, 171 Va. 543, 548 (1938)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

In *Daniels*, the Supreme Court of Virginia observed that "[c]ourts have long recognized dangers inherent in eyewitness identification testimony." 275 Va. at 464.

> [S]ome state and federal courts, citing continued research on eyewitness identification, have opined that courts should guard against a jury assuming that admitted eyewitness identification testimony is unquestionably reliable and credible simply because it was admitted in evidence. Accordingly, these jurisdictions have allowed a specific jury instruction alerting the jury to the dangers

- 7 -

of eyewitness identification testimony both with regard to the circumstances of the identification and the possibility of a sincere mistake in identification. In some jurisdictions, such instructions are required in cases in which the defendant requests the instruction and identification of the defendant is a central part of the prosecution's case. In others, such cautionary instructions are permissible, but not required, if the circumstances warrant.

*Id.* at 465 (citations omitted). Nonetheless, the Court found that, in Virginia, "[w]e have not adopted a rule . . . which requires a cautionary instruction on eyewitness identification in every case in which it is requested and the identification of the defendant is central to the prosecution's case." *Id.* But "[n]either ha[s the Court] opined that such an instruction would never be appropriate, nor that a court would abuse its discretion by granting such an instruction." *Id.*

In *Payne v. Commonwealth*, 292 Va. 855 (2016), the Supreme Court considered whether the trial court erred in refusing a proffered jury instruction on eyewitness identification modeled upon an instruction discussed in *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). The Court observed that "the very specificity of Payne's instruction counseled against its use, in the form and using the precise language he proffered." *Payne*, 292 Va. at 871. "The proffered instruction would have focused the jury's attention on four enumerated factors, thereby suggesting that those four factors were exclusive or at least entitled to special consideration or undue weight." *Id.* The Court further noted that while a party may, in closing argument, "focus the jurors' attention on the evidence it prefers them to consider during their deliberations, it is not appropriate for the *court* to do so in a jury instruction because, under the law of Virginia, the jury is free to weigh the evidence how it chooses." *Id.* The Court reaffirmed the holding in *Daniels* that it is within the trial court's discretion to deny an instruction on eyewitness identification. *Id.* at 872.

Here, appellant argues that eyewitness identification was critical to his convictions and that general instructions were insufficient as eyewitness identification is the least reliable type of

evidence. He asserts that an instruction dealing specifically with eyewitness identification was warranted due to the inherent dangers of eyewitness identification testimony or the possibility of the witness making a sincere mistake.

As in *Payne*, the trial court in this case granted the Virginia model jury instruction concerning the jury's role in judging the credibility of witnesses, the burden of proof, and circumstantial evidence. The model instruction on witnesses' credibility, like the proposed instruction, instructed the jury to consider the circumstances of the witnesses' intelligence, their bias, "their opportunity for knowing the truth and for having observed the things about which they testified." The jury was appropriately instructed regarding the Commonwealth's burden of proving appellant's identity beyond a reasonable doubt, as well as on the presumption of innocence. The granted instructions given by the trial court thus addressed the defense theory that the eyewitness testimony lacked credibility and accuracy. As such, granting appellant's proposed instruction would have been duplicative. We find no abuse of discretion in the trial court's decision to deny appellant's proffered instruction on eyewitness identification.[6]

---

[6] Appellant also argues that the trial court erred in finding Robert Horton, a co-owner and custodian of record for Murphy's Law Pub, unavailable as a witness and, as a result, admitting his testimony from the preliminary hearing. Prior to trial, the Commonwealth moved the trial court to admit Horton's former testimony at trial because he had become an unavailable witness. Horton testified at a preliminary hearing on August 1, 2019, and was subject to cross-examination. Thereafter, Horton became a government contractor in Bahrain and was stationed there until October 2020. After a hearing on the matter, the trial court granted the Commonwealth's motion for "reasons stated to the record" in an order dated October 28, 2019. The record on appeal does not contain a transcript of the October 24, 2019 pretrial motion hearing nor does it contain a written statement of facts in lieu of a transcript regarding the hearing. "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (alterations in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). "Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review." *Id.* at 529. After reviewing the record and the opening brief, we conclude that a timely filed transcript or written statement of facts is indispensable to a determination of appellant's argument. *See Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000); *Turner*, 2

CONCLUSION

We hold that the evidence was sufficient to support appellant's convictions. Further, the trial court did not abuse its discretion when it refused proffered Instruction B. Accordingly, we affirm appellant's convictions.

*Affirmed.*

---

Va. App. at 99-100. Therefore, we do not address the merits of this argument. Rule 5A:8(b)(4)(ii).