COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present:   Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


DWAYNE LAMONT MOORMAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1182-23-3                JUDGE ROBERT J. HUMPHREYS
                                                    OCTOBER 8, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Meghan Shapiro, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Allison Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Dwayne Moorman appeals his convictions of possession with intent to distribute a Schedule

I or II controlled substance, in violation of Code § 18.2-248; possession of a firearm while

possessing with intent to distribute a Schedule I or II controlled substance, in violation of Code

§ 18.2-308.4; and possession of a firearm by a convicted violent felon, in violation of Code

§ 18.2-308.2.  He argues that the trial court erred by: (1) denying his *Batson*[1] motion, (2) denying

his motion to dismiss the indictments on speedy trial grounds, (3) denying his motion to strike the

evidence as insufficient to support his convictions, (4) denying his own proposed jury instruction

about constructive possession, and (5) including a typographical error misstating the law on

constructive possession in a jury instruction.  Finding no error, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

BACKGROUND[2]

In October 2021, Moorman and his girlfriend, Jennifer Branch, lived with their two children in Lynchburg, Virginia. Their two-story residence consisted of an upper level with a living room, two bedrooms for the children, and a bathroom; and a lower level with a second living room, Moorman and Branch's bedroom, the laundry room, and the kitchen. On October 4, 2021, Branch was upstairs when she heard "rumbling" coming from Moorman's bedroom and called the police. As Lynchburg Police Officer Rowland approached the house, Moorman exited through the front door and exclaimed, "I've been shot. Somebody broke into my house. I need an ambulance. . . . Somebody broke into my back door." Moorman confirmed to Officer Rowland that he lived at the house. When Officer Rowland and other officers conducted a protective sweep of the residence, they saw green plant material, suspected hash oil, and drug packaging materials in Moorman's bedroom.

Moorman told Lynchburg Police Detective Dubie that he had awoken to see someone standing in his room holding a gun and wearing a ski mask. Moorman claimed that he struggled with the intruder before forcing him from the bedroom. The intruder then fired through the bedroom door, striking Moorman before fleeing.

Detectives secured a search warrant for Moorman's residence. Detectives Dubie and Booth searched the house while Detective Shumate collected and packaged evidence. Detective Shumate wore gloves and shoe covers inside the residence. She testified that she changed gloves after touching each item of evidence. She did not place any items on a surface bearing a blood

---

[2] Under settled precedent, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

stain. Detective Dubie confirmed that everyone searching the residence wore gloves and that he changed gloves each time he touched "something messy like blood."

Downstairs, police found four cartridge casings in the kitchen and ammunition, a magazine, and a rifle in the laundry room. On the floor in front of the washer and dryer, they discovered a backpack containing four firearms—a Charter Arms revolver, a Glock pistol, a Sig Sauer pistol, and a Smith & Wesson handgun. Also inside the backpack were two plastic baggies containing 139.43 grams and 13.87 grams of cocaine. Detective Shumate collected a DNA swab sample from the Smith & Wesson. Forensic testing showed that Moorman could not be excluded as a major contributor to the DNA recovered from the pistol, and the likelihood that another individual contributed the DNA was one in greater than 7.2 billion. Police also found "[a] large sum of cash" in varying denominations, two scales, and packing materials in Moorman's bedroom. A white powder, consistent with cocaine residue, was on Moorman's dresser, the bedroom floor, and the two scales.

Police arrested Moorman on March 11, 2022, and he was held in custody. The Lynchburg General District Court certified his charges to the grand jury on May 4, 2022, which returned indictments against Moorman on June 6, 2022. A jury trial was scheduled for September 27, 2022.

On August 10, 2022, Moorman moved to suppress evidence, and the following day the Commonwealth filed a "Request to Dismiss Motion to Suppress or Request for a Bill of Particulars." On August 30, 2022, the trial court granted Moorman leave to file an amended motion to suppress, which he filed on September 12, 2022, along with a motion for a *Franks*[3] hearing. The Commonwealth filed responsive pleadings on September 19, 2022. The following day, Moorman moved to set a hearing.

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

On September 21, 2022, the trial court held a hearing on Moorman's request to schedule a suppression hearing. The Commonwealth told the court that Sergeant Claytor, Detective Dubie, Officer Bryan, and Officer Rowland were necessary witnesses for the suppression hearing and were not all available on the same day before the September 27, 2022 trial date. Moorman stated that "he d[id] not want to agree to a continuance because he [wa]s being held in custody and he want[ed] to have his trial date." The trial court found that it was "not possible to have a suppression hearing based on various circumstances involving the officers that are required to be here" so "a delay of the trial date" was necessary "because we just don't have time." The trial court further found that the "delay [wa]s caused by the motions" Moorman had filed. The trial court continued the case to the next docket call so counsel could select new dates for the suppression hearing and trial. The court held that the speedy trial deadline was tolled from September 12, 2022—the date Moorman filed his amended motion to suppress—until the trial court ruled on his motion.

At the October 3, 2022 docket call, the parties scheduled the suppression hearing for December 30, 2022, and the trial for January 10, 2023. The written orders stated that the continuance was made "[o]n motion of the defendant, by counsel, and with the concurrence of the Commonwealth." The trial court subsequently denied Moorman's motion to suppress.

During voir dire, Moorman asked the prospective jurors whether there was anything that would affect their ability to hear the case. Juror K.T. replied:

> I look at this young man and that could be my son and, you know,
> I'm not saying I'm biased but, you know, I want to be here and
> fight for him like he's my son so I don't know does that mean bias
> or just being -- I look at it as being fair.

Moorman asked whether K.T. could still be fair, and she replied, "Absolutely, yes." The Commonwealth later exercised all four of its peremptory strikes to remove African-American women from the venire, and Moorman raised a *Batson* objection. One of those peremptory

- 4 -

strikes was against K.T. The Commonwealth stated that it struck K.T. because of "her comment that she looks at [Moorman] as her son and wants to fight for him like he's her son." Moorman countered that the Commonwealth's stated reason was not race-neutral:

> I would suggest that that's the very nature of the argument, the idea that because she's African American and she can see my client, who's African American, in that -- in that same kind of -- as someone who's like her is the very nature of . . . I mean, just that the concern was that she also spoke about -- that she talked about her that she could be his mother.

The trial court found that "a race neutral explanation has been offered" based on the statement K.T. made about "fighting for [Moorman]," and overruled the objection.

After the Commonwealth rested, Moorman moved to strike the evidence. He argued that there was no connection between him and the firearms and cocaine and that his "mere proximity in the house" did not prove he possessed the contraband. He also argued that the officers transferred his DNA to the firearm while collecting evidence. The trial court denied the motion to strike.

Moorman presented evidence and then renewed his motion to strike. Moorman argued that there was "insufficient evidence as a matter of law that the items in the laundry room were in any way known by or possessed by" him. He further argued that the Commonwealth had failed to prove that any of the recovered guns met the statutory definition of a firearm because there was no evidence that the Commonwealth had tested the weapons. The trial court denied the renewed motion to strike.

The parties agreed to Jury Instruction J, which stated:

> To knowingly and intentionally possess a controlled substance means that a person is aware of the presence and character of the substance and has actual physical possession or constructive possession. Actual physical possession means that the substance is found on the person. Constructive possession means that the person has dominion and control over the substance. Mere proximity is not enough.

Possession need not be exclusive; it may be shared with another. The length of time of the possession is not material.

Ownership or occupancy of the premises in which a controlled substance is found does not create a presumption that the owner or occupant either knowingly or intentionally possessed such substance. Such ownership or occupancy is a fact which may be considered with other evidence.

Possession may be proved by acts, declarations or conduct of Mr. Moorman from which it may be fairly inferred that he was aware of the presence and character of the substance at the place found.

Moorman also proffered Jury Instruction K, which stated, "Ownership or occupancy of a premises, standing alone, is not sufficient to establish possession." The trial court refused Jury Instruction K as duplicative of Jury Instruction J.

The Commonwealth proffered a jury instruction to the trial court on constructive possession, which read:

Actual possession of both the firearm and the controlled substance is not required.

The Commonwealth may prove that the defendant constructively possessed a firearm and constructively possessed Cocaine. Constructive possession of either or both is sufficient for conviction.

To *support* a conviction based upon constructive possession, the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.

(Emphasis added). Moorman objected to the instruction's use of the word "support." The parties agreed to amend the instruction to substitute the word "prove" for "support," and the trial court directed the clerk to retype the instruction. After the evidence concluded, the trial court gave the parties a copy of the jury instructions to review and directed the parties "to pay

particular attention to" the amended instruction, now labeled Jury Instruction I.  Moorman

confirmed that he had no objection to Jury Instruction I.

Jury Instruction I, as retyped, provided:

> Actual possession of the firearm is not required.  The Commonwealth may prove that the defendant constructively possessed a firearm.
>
> To prove constructive possession, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm, and that the firearm was subject to his *domain* and control.

(Emphasis added).  The trial court used the word "dominion" instead of "domain" when it read

Jury Instruction I to the jury.  The Commonwealth also used the phrase "dominion and control"

twice when explaining constructive possession during closing argument.  The jury ultimately

convicted Moorman of possession with intent to distribute a Schedule I or II controlled

substance, possession of a firearm while possessing with intent to distribute a Schedule I or II

controlled substance, and possession of a firearm by a convicted violent felon.

Moorman moved to set aside the verdict, arguing that: (1) the Commonwealth failed to

prove that he possessed a firearm, and (2) Jury Instruction I misstated the law.  Several days

later, he moved to dismiss the indictments, asserting that both his constitutional and statutory

speedy trial rights were violated.

The trial court addressed Moorman's post-trial motions at the sentencing hearing.  First,

Moorman argued that the Commonwealth failed to prove that he possessed items that were

designed or intended to expel a projectile because the Commonwealth's firearm expert had only

seen pictures of the weapons.  The trial court ruled that the evidence was sufficient to support the

jury's finding that the items were firearms, pointing to the detectives' testimony identifying the

make and model of the firearms and denying that they were BB or pellet guns and the fact that the Commonwealth showed the firearms to the jury as demonstrative exhibits.

Next, Moorman argued that the verdict should be set aside because the parties had agreed to Jury Instruction I with the language "dominion and control," but the instruction given to the jury used the phrase "domain and control." He argued that his failure to object contemporaneously was excused by good cause because "everything occurred orally" and the ends of justice exception applied because the instruction misstated the law. The trial court denied Moorman's motion because it had provided the parties with a copy of Jury Instruction I and specifically instructed them to review it, Moorman had not objected, and the trial court used the correct phrase "dominion and control" when reading the instruction to the jury.

Finally, Moorman argued that his speedy trial rights were violated by the 305-day delay between his arrest and trial. The trial court denied the motion after finding that the Supreme Court of Virginia's emergency orders tolled the speedy trial clock through June 22, 2022, and noting that the parties were unable to schedule a hearing on the motion to suppress before September 27, 2022, because of the witnesses' schedules. The trial court further found that "the continuance was necessitated by Mr. Moorman's filing of the motion to suppress" and that Moorman had agreed to the January 10, 2023 trial date. Accordingly, the court found that the speedy trial clock was tolled from September 12, 2022, to December 30, 2022, and denied his motion to dismiss on speedy trial grounds.

ANALYSIS

I. *Batson*

"[A] defendant [has] the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986). To that end, "the Equal Protection Clause forbids [a] prosecutor to challenge potential jurors solely on account of

- 8 -

their race or on the assumption that [B]lack jurors as a group will be unable impartially to consider the State's case against a [B]lack defendant." *Id.* at 89; *see also Stevens v. Commonwealth*, 70 Va. App. 280, 296-99 (2019).

Moorman asserts that the trial court erred by denying his *Batson* challenge to the Commonwealth's peremptory strike of Juror K.T. after she stated that Moorman "could be [her] son" and that she wanted to be there to "fight for him like he's [her] son." Moorman reasons that K.T.'s statement was "inseparable from the race she has in common with" him, and thus, that the Commonwealth's use of its peremptory strike was not "race neutral." We disagree.

"A *Batson* challenge involves three sequential steps . . . ." *Bethea v. Commonwealth*, 297 Va. 730, 748 (2019). First, "the opponent of the strike 'must make out a prima facie case' of purposeful discrimination." *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). Second, the burden shifts to the Commonwealth to "'explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Johnson*, 545 U.S. at 168). Third, if the Commonwealth tenders a race-neutral explanation, "the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination." *Id.* (quoting *Johnson*, 545 U.S. at 168).

> [T]o establish such a prima facie case, "the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."

*Johnson v. Commonwealth*, 259 Va. 654, 674 (2000) (second and third alterations in original) (quoting *Batson*, 476 U.S. at 96). When considering whether the defendant has made a prima facie

showing of racial discrimination, the trial court "'should consider all relevant circumstances,' including but not limited to, 'a "pattern" of strikes against [African-American] jurors,' or 'the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges.'" *Stevens*, 70 Va. App. at 299 (alteration in original) (quoting *Batson*, 476 U.S. at 96-97). "In other words, the trial court is not limited in what it could potentially identify as sufficient evidence of racial discrimination." *Id.* The *Batson* framework "presumes the good faith of prosecutors," and the movant "ultimately carries the 'burden of persuasion' to 'prove the existence of purposeful discrimination.'" *Bethea*, 297 Va. at 748 (quoting *Johnson*, 545 U.S. at 170-71).

"In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez v. New York*, 500 U.S. 352, 359 (1991). "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id.* at 359-60 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). Rather, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* at 360 (quoting *Arlington Heights*, 429 U.S. at 265).

Whether the Commonwealth intends to discriminate "[i]s a pure issue of fact." *Bethea*, 297 Va. at 756 (alteration in original) (quoting *Hernandez*, 500 U.S. at 364). We therefore give "great deference" to the trial court's credibility findings as they concern the Commonwealth's reasons for its peremptory strikes. *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 271 (2015)). "On appeal, the trial court's findings will be reversed only if they are clearly erroneous." *Buck v. Commonwealth*, 247 Va. 449, 451 (1994). The "decisive question" is whether counsel's race-neutral explanation for a peremptory challenge is credible. *Hernandez*, 500 U.S. at 365. "This standard of review logically

recognizes the trial court's unique opportunity to observe and evaluate 'the prosecutor's state of mind based on demeanor and credibility' in the context of the case then before the court." *Robertson v. Commonwealth*, 18 Va. App. 635, 639 (1994) (quoting *Hernandez*, 500 U.S. at 365).

In this case, Moorman failed to prove that the Commonwealth purposefully discriminated on the basis of race when it struck K.T. from the jury.[4] "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360. The Commonwealth proffered that it struck K.T. because she stated that Moorman "could be [her] son" and that she wanted "to be here and *fight for him*" like he was her son. (Emphasis added). Such a statement of advocacy for the defendant by a prospective juror is a race-neutral reason for the Commonwealth to exercise a peremptory strike; the Commonwealth was not required to blindly accept K.T.'s assertion that she could nonetheless follow the judge's instructions and render a verdict based solely on the evidence. After all, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause" to sustain a peremptory challenge. *Batson*, 476 U.S. at 97. The Commonwealth need only "articulate a neutral explanation related to the particular case to be tried." *Id.* at 98. The Commonwealth met that burden here.

We reject Moorman's argument that the Commonwealth's reason "necessarily included the fact of [K.T.'s] race (Black) because it concerned her self-identification with [Moorman's] appearance as a Black man." But the Commonwealth did not express concern that K.T. would be partial toward the defendant based on her race. *See Batson*, 476 U.S. at 89. Rather, K.T. *expressly stated* that she would be partial toward Moorman. Regardless of the source of her partiality, the trial court could conclude that her expressed bias, not her race, prompted the strike. *See Batson*, 476 U.S. at 87 ("Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability *impartially* to consider evidence presented at a trial." (emphasis added)).

---

[4] It is undisputed that Moorman satisfied the first step of a *Batson* challenge.

Finally, Moorman argues that the Commonwealth's race-neutral reason was pretextual for the same reason he argues it was not race-neutral. His argument fails for the same reasons. Peremptory challenges "traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." *Batson*, 476 U.S. at 91. Because K.T.'s statement revealed a lack of impartiality, the record supports the Commonwealth's race-neutral use of its peremptory strike to exclude her from the jury. For that reason, we affirm the trial court's denial of Moorman's *Batson* motion.

## II. Speedy Trial

Moorman next contends that the trial court erred when it denied his post-trial motion to dismiss the indictments on both constitutional and statutory speedy trial grounds. We need not reach the merits of Moorman's claims, however, because his speedy trial motion came too late. Therefore, this assignment of error is waived.

"Defense motions or objections seeking . . . dismissal of a warrant, information, or indictment . . . on the ground that . . . the defendant would be deprived of a speedy trial" must be "raised in writing, before trial." Code § 19.2-266.2(A), (B); *see also* Rule 3A:9(c). "The circuit court may, however, for good cause shown and in the interest of justice, permit the motions or objections to be raised at a later time." Code § 19.2-266.2(B). "The plain language of Code § 19.2-266.2 requires defendants—absent good cause—to make motions for dismissal of charges for constitutional and statutory speedy trial violations in writing within the later of seven days before trial or as soon as the grounds for the motion arise prior to trial." *Bass v. Commonwealth*, 70 Va. App. 522, 534 (2019). "These requirements are not superfluous administrative hurdles." *Id.* They "serve[] legitimate state interests in protecting against surprise, harassment, and undue delay." *Arrington v. Commonwealth*, 53 Va. App. 635, 640 (2009) (alteration in original) (quoting *Magruder v. Commonwealth*, 275 Va. 283, 300 (2008), *vacated and remanded sub nom*). They are

- 12 -

also necessary to allow the Commonwealth to exercise its limited right to appeal under Code § 19.2-398.[5] *See Upchurch v. Commonwealth*, 31 Va. App. 48, 53 (1999).

In this case, Moorman did not move to dismiss the indictments until more than five months *after* his trial ended and the jury convicted him. He insists that the trial court precluded him from asserting his speedy trial rights when it refused to set a hearing on his motion to suppress and by continuing the December 27, 2022 jury trial over his objection. Even were that so, nothing prohibited Moorman from filing a motion to dismiss on speedy trial grounds before the jury trial began on January 10, 2023. Indeed, the trial court ruled on his suppression motion on December 30, 2022, more than seven days before trial, affording him sufficient time to file a motion to dismiss within the time limits established in Code § 19.2-266.2 and Rule 3A:9(c). He failed to do so, and instead waited more than five months to raise the issue in the trial court.

Moreover, the trial court did not excuse his failure to bring the motion within the deadline. The trial court considered, and rejected, Moorman's claim that he never agreed to the January 10, 2023 trial date and reminded him that the last-minute filing of his suppression motion necessitated a continuance of the jury trial. The trial court also questioned why Moorman did not contemporaneously object when the parties first discussed a continuance. Thus, the record fails to demonstrate that good cause excused Moorman's failure to comply with the statute or the Rule. Accordingly, Moorman has waived his speedy trial claims.

### III. and IV. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly

---

[5] The Commonwealth may appeal the pretrial dismissal of a felony charge for a speedy trial violation. Code § 19.2-398(A)(1)(i).

wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Instead, the only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Ervin v. Commonwealth*, 57 Va. App. 495, 502 (2011) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Moorman claims that the evidence did not support his convictions for these offenses because (1) the Commonwealth did not prove that any of the guns found in his home met the definition of a "firearm" and (2) the Commonwealth did not prove that he constructively possessed the contraband found in his laundry room. We address each assertion in turn.

## A. The Firearms

It is unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Code § 18.2-308.2(A). Similarly, it is unlawful "for any person unlawfully in possession of a controlled substance

classified in Schedule I or II of the Drug Control Act . . . to simultaneously with knowledge and intent possess any firearm." Code § 18.2-308.4(A). To sustain a conviction under Code §§ 18.2-308.2 and -308.4, the Commonwealth need not prove that the firearm was "'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002). Rather, "the evidence need show only that a person subject to the provisions of [those] statute[s] possessed an instrument which was *designed, made, and intended* to expel a projectile by means of an explosion." *Id.* (emphasis added); *see also McDaniel v. Commonwealth*, 264 Va. 429 (2002). "Whether the object is a firearm that was designed, made, and intended to fire or expel a projectile by means of an explosion is a question of fact that may be proven by circumstantial evidence." *Speller v. Commonwealth*, 69 Va. App. 378, 395 (2018). "[S]*pecific testimony* that the object was designed, made, and intended to fire or expel a projectile by means of an explosion" is not required. *Id.*

In *Jordan v. Commonwealth*, 286 Va. 153 (2013), the Supreme Court affirmed Jordan's conviction under Code § 18.2-308.2, where the evidence proved that the victim was familiar with handguns because his father was in the military; the victim identified the specific make of the firearm describing it as a small silver semiautomatic pistol; and Jordan pointed the gun at the victim's head during a carjacking, implying his intent to harm the victim. *Id.* at 155. On cross-examination the victim could not say "for certain that the object was not a toy gun" but, when asked on re-direct whether the gun looked like a toy gun, responded, "[a] really detailed [one] if it was." *Id.* (alterations in original). The Supreme Court held that the evidence was sufficient to prove that the object Jordan held during the carjacking was, in fact, a firearm. *Id.* at 159.

Here, the evidence established that the firearms found in Moorman's house were instruments "designed, made, and intended to expel a projectile by means of an explosion." *Armstrong*, 263 Va. at 584. Detective Dubie testified that he recovered a "Sig Sauer handgun, [a]

- 15 -

Smith & Wesson handgun, [a] Glock 43 handgun, [a] .380 special revolver, [and] an AR rifle" during the search, and he affirmed that these were all firearms. Similarly, Detective Shumate and Detective Bragg both identified the five weapons recovered from the laundry room by make and model. Detective Shumate testified that the Glock pistol and the Sig Sauer pistol were "loaded" and that she removed the magazines before packing the weapons. Police also found ammunition in the laundry room near the guns.

At trial, Detective Shumate viewed the Sig Sauer and Smith & Wesson pistols and affirmed that they were firearms the officers recovered from Moorman's laundry room. The jury also observed those two firearms at trial. Detective Bragg affirmed that the weapons were all firearms and explained that they were "designed and intended to expel a projectile by means of explosion." And Detective Shumate testified that none of the firearms were "BB guns or pellet guns."

A reasonable fact finder could conclude from that evidence that at least one of the weapons recovered from Moorman's residence met the statutory definition of a firearm.

### B. Constructive Possession

It is unlawful "for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance." Code § 18.2-248(A). "'A conviction for the unlawful possession of [contraband] can be supported exclusively by evidence of constructive possession,' whether sole or joint." *Lewis v. Commonwealth*, 76 Va. App. 92, 102 (2022) (alteration in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)). "Constructive possession may be established by 'evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control.'" *Id.* (alterations in original) (quoting *Smallwood*, 278 Va. at 630). "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to

- 16 -

the [contraband], it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the [contraband]." *Smallwood*, 278 Va. at 630-31 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)).

Applying those principles, sufficient evidence supported the jury's finding that Moorman constructively possessed the firearms and the narcotics recovered from the backpack the police found in the laundry room. Moorman admitted that the downstairs bedroom was his and that he was sleeping in that bedroom on the night the intruder shot him. Police recovered two scales, packaging materials, and a large sum of cash in various denominations from the bedroom. Detective Hendricks also saw white powder consistent with cocaine residue on Moorman's dresser, the bedroom floor, and the two scales. The backpack contained four firearms, more packaging materials, and two separately packaged quantities of cocaine, weighing 13.87 grams and 139.43 grams respectively. Moorman could not be excluded as a major contributor of a DNA sample recovered from one of the firearms in the backpack, and the likelihood that another individual contributed to that DNA was one in greater than 7.2 billion. At a minimum, the evidence showed that Moorman was aware of the nature and character of the firearm bearing his DNA and that it was subject to his dominion and control. The packaging materials, apparent cocaine residue, and large sum of cash found in Moorman's bedroom also supported an inference that he was aware of the cocaine in the backpack and that it was, like the firearm, subject to his dominion and control.

The record does not support Moorman's assertion that the DNA test results lacked evidentiary value "given the extent of contamination." Based on the officers' testimony describing the care they took when collecting the evidence, the jury could reasonably conclude that no contamination occurred.

"[C]ircumstantial evidence is not viewed in isolation." *Pulley v. Commonwealth*, 74 Va. App. 104, 128 (2021) (alteration in original) (quoting *Holloway v. Commonwealth*, 57 Va. App.

- 17 -

658, 665 (2011) (en banc)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Holloway*, 57 Va. App. at 665-66 (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Here, the facts and circumstances are sufficient to lead a reasonable mind irresistibly to the conclusion that Moorman possessed the firearms and the cocaine recovered from the backpack found in the laundry room. Therefore, the evidence was sufficient to support his convictions.

## V. and VI. Jury Instructions

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

### A. Proffered Instruction K

When reviewing "a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Dandridge v. Commonwealth*, 72 Va. App. 669, 676 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 260 (2018)). Moorman argues that the trial court erred in refusing his proposed Jury Instruction K. He contends that it correctly stated the law and, unlike Instruction J, "would have applied to both possession of a controlled substance as well as a firearm."

- 18 -

"When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008) (quoting *Stockton v. Commonwealth*, 227 Va. 124, 145 (1984)). "Parties are not entitled to redundant instructions covering principles of law already addressed in other instructions." *Payne v. Commonwealth*, 65 Va. App. 194, 213 (2015), *aff'd*, 292 Va. 855 (2016).

Moorman's proffered Jury Instruction K stated that "Ownership or occupancy of a premises, standing alone, is not sufficient to establish possession." Jury Instruction J stated that "Constructive possession means that the person has dominion and control over the substance. *Mere proximity is not enough.*" (Emphasis added). It further stated, "Ownership or occupancy of the premises in which a controlled substance is found does not create a presumption that the owner or occupant either knowingly or intentionally possessed such substance. Such ownership or occupancy is a fact which may be considered with other evidence." Both instructions would therefore inform the jury that a conviction for possession of contraband could not be sustained merely because the contraband was found in Moorman's residence, but Jury Instruction J was a more detailed and accurate statement of the law. As such, the trial court did not abuse its discretion in granting Instruction J and refusing Instruction K. It is well-settled that "a court may exercise its discretion and properly exclude an instruction that both correctly states the law and is supported by the evidence when other granted instructions fully and fairly cover the relevant principle of law." *Payne*, 292 Va. at 869 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 256 (2013)).

Nevertheless, Moorman argues for the first time on appeal that, because the language regarding constructive possession in Instruction J referred only to controlled substances and did not mention firearms, the trial court failed to properly instruct the jury that he could not be convicted of the possession of a firearm based solely on his mere proximity to the firearms recovered from his

house. He therefore seeks reversal of his convictions on the weapons charges. However, Moorman specifically did not object to Instruction J on the basis that it only included language pertaining to the constructive possession of controlled substances. Because he did not raise a timely and specific objection to Instruction J on that basis, we will not consider it. Rule 5A:18.

Moreover, any error in this instruction was harmless. The law with respect to constructive possession is the same irrespective of the contraband possessed. While Instruction J could have been clearer, it certainly was not confusing and correctly stated the law regarding constructive possession. Thus, because the trial court properly instructed the jury on principles of law governing constructive possession and mere proximity to contraband, any asserted error in the trial court's refusal of Instruction K was harmless. We cannot conclude that the jury would have returned a different verdict. "Under the harmless error doctrine, the judgment of the court below will be affirmed whenever we can say that the error complained of could not have affected the result." *Rhoades v. Painter*, 234 Va. 20, 24 (1987).

Simply put, Moorman's proposed Instruction K "was no more or less correct than the instruction given. While it 'was a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it.'" *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc) (quoting *Lincoln v. Commonwealth*, 217 Va. 370, 375 (1976)). Accordingly, we affirm the trial court's refusal of proposed Jury Instruction K.

### B. Given Instruction I

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable [the Court of Appeals] to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the

issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64

Va. App. 185, 195 (2015).

> Specificity and timeliness undergird the
> contemporaneous-objection rule, animate its highly practical
> purpose, and allow the rule to resonate with simplicity: "Not just
> any objection will do. It must be both *specific* and *timely*—so that
> the trial judge would know the particular point being made in time
> to do something about it."

*Bethea*, 297 Va. at 743 (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Moorman asserts that the trial court erred in giving Jury Instruction I, which contained a

typographical error resulting in an incorrect statement of the law. Moorman did not timely object to

the instruction as written, however, so he has waived this assignment of error. Acknowledging his

failure to object, Moorman asks this Court to apply the good cause and ends of justice exceptions to

his waiver, which we decline to do.

This Court "may only invoke the 'good cause' exception where an appellant did not have

the opportunity to object to a ruling in the trial court; however, when an appellant 'had the

opportunity to object but elected not to do so,' the exception does not apply." *Perry v.

Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827,

834 (2000)). Here, Moorman had the opportunity to object to Jury Instruction I; he just failed to do

so. Before reading the instructions to the jury, the trial court provided the attorneys with copies for

review and asked them to "pay particular attention" to Jury Instruction I. When the trial court

inquired if there was any objection to the instruction, Moorman's counsel answered, "No, Your

Honor." The good cause exception to Rule 5A:18 does not apply in this circumstance.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'"

*Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53

Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions:

"(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the

ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

We find no manifest injustice here. Although the typed jury instruction used the phrase "domain and control" rather than "dominion and control," the trial court used the correct phrase "dominion and control" in reading the instruction to the jury, and the Commonwealth twice used the phrase "dominion and control" in closing argument. Moreover, the evidence at trial proved that Moorman in fact exercised dominion and control over the contraband found in his house. His DNA was found on the Smith & Wesson pistol recovered from the backpack and the packaging materials, scales, residue, and cash recovered from his bedroom supported the reasonable inference that he also had dominion and control over the items found in the laundry room.

"[T]he record must 'affirmatively show[] that a miscarriage of justice has occurred not . . . that a miscarriage *might* have occurred.'" *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (en banc) (second and third alterations in original) (quoting *Mounce v. Commonwealth*, 4 Va. App. 433, 436 (1987)). This standard requires the appellant to "show that *either* the conduct for which he was convicted is not a criminal offense *or* that the record affirmatively establishes that an element of the offense did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015) (emphases added). The record here does not support either conclusion. Thus, the "ends of justice" exception does not excuse Moorman's failure to preserve this error for appeal.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*