# Richmond

## ROOSEVELT IVES v. COMMONWEALTH OF VIRGINIA.

March 4, 1946.

Record No. 3038.

Present, All the Justices.

The opinion states the case.

*Harry Nicholson* and *James G. Martin & Son,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

This was a prosecution for robbery and the accused was found guilty by a jury which fixed his punishment at twenty years in the penitentiary, which was approved by the judgment of the court. There are two assignments of error, to-wit:

"1. The court erred in refusing Instruction M offered by Ives.

"2. The court erred in allowing the prosecution to put in evidence a mask made of a shirt sleeve with eye holes cut in it, found by the police in a room next to a room Ives occupied when he was arrested in April, 1945; seven months after the robbery of September 8, 1944; in a different building from that in which Ives lived September 8, 1944; and

when the prosecution's own witness showed that no such mask was used in the robbery in question."

This is the instruction objected to:

"The court instructs the jury that the question of the identity of the accused in this case is one of grave consideration for the jury in forming their verdict; and before the defendant can be convicted, the Commonwealth must prove that question beyond a reasonable doubt."

The ruling of the court in refusing to grant this instruction was not error for manifold reasons:

(1) The reasonable doubt and presumption of innocence, Instruction A, granted at the instance of the defendant, was very full and complete and presented ample and legal room to emphasize in argument the question of identity.

(2) The assailed instruction offended the rule against selecting portions of the evidence and emphasizing them, thus giving them undue weight and prominence.

(3) The instruction, framed and expressed as it was, would have carried to the jury a sense of doubt upon the part of the court as to the identity of the accused. To pass upon the weight of the testimony is, of course, not within the province of the court.

The defense introduced no evidence. That of the Commonwealth, approved by the verdict of the jury, is uncontradicted, and it is abundant to convict the accused of the crime charged.

A man named Riddick, a professional bondsman, and known to have much ready money, which was used in his business, was attacked about midnight as he was walking from his garage to his house. Three masked men armed with pistols and knives were engaged in the attack. One of these, positively identified by the victim, was the accused, Roosevelt Ives. The following extract from the testimony of Riddick, the victim, is pertinent:

"Howard Sharp came and grabbed me around the waist and said, 'We are holding you up.' * * * * and he took $13.00 out of my pocket. * * * * Howard Sharp had me around the waist. Roosevelt Ives had a two-blade dirk and

kept it to my neck all the time.  * * * * Then after that, they said, 'Go on in the back door.'  Roosevelt Ives kept the knife to my neck all the time.  Sharp had a pistol and Copeland had a pistol, and they had searchlights.  They had gloves on their hands.

"They made me open the back door and went into the house and into my dining room.  Copeland said, 'There is a safe in the hall,' and they made me open it.  * * * * He said that they were going to cut my throat and if I didn't they would shoot me."

They took out of the safe $12,750.00 and forced Riddick back to the garage in which they locked him.

Upon cross examination, the defense sought to break down Riddick's story by showing discrepancies between his testimony at the trial of Copeland, one of the robbers, and that at the trial under review.  That there were such discrepancies is quite true but the testimony as a whole is so overwhelming as to the guilt of the accused as to make the dissimilarity of his testimony of negligible consequence.

The testimony shows that Ives, from the time of the commission of the crime, September 8, 1944, to that of his arrest, April, 1945, lived a nomadic sort of life.  He went from place to place, dodging apprehension and detection, until he was finally run down.  He was then living on the second floor of a two-story building in association with a negro, named Charlie Harris, and a nondescript woman.

The second floor was composed of three rooms—all connecting, and in a line one after the other.  They were all open and of easy and ready access.  Ives occupied the middle room and of necessity had to pass through one of the others to get out.  A loaded army pistol was found in a coal basket in the kitchen or third room; another loaded army pistol was found on the top of a chiffonier in the middle room; and a mask was found in the front room.  This article was a part of a sleeve of an undershirt with eye holes cut into it.

Riddick testified that the masks used by his assailants were handkerchiefs across the lower parts of their faces.

As there was no testimony that the sleeve mask was used

in the precise robbery and as it was found seven months after the commission of the crime and in a room not occupied by the accused at the time, it is urged that the court erred in admitting it as evidence over the objection of the accused. The defense took the position that its presence in the trial had the probable effect of increasing the term of punishment.

We think the mask under all the circumstances in the case was admissible.

In 54 C. J. 1060, *"Robbery" Section* 158, this is said:

" 'Where defendant's possession of weapons or other instruments of crime affords no reasonable inference of guilt of the offense charged it should be excluded. But subject to this qualification, and in accordance with general rules, evidence is admissible in a robbery prosecution to show that accused owned, possessed, or had access to tools, implements, or other articles with which the robbery was *or might have been committed,* and especially when the article is of a lethal nature. Thus it is ordinarily permissible to prove defendant's ownership or possession of weapons before or after commission of the robbery, as where weapons were later found in defendant's car, or in a room occupied by him, or in an outbuilding adjacent to his residence.

" 'In accordance with general rules, weapons or other articles are admissible in evidence when it appears from other evidence that they were *or might have been used in the robbery.'* " (Italics supplied.)

This court has cited cases holding that the unexplained possession of burglarious materials after a nine-months interval between such possession and the crime is not too remote to properly connect the two.

*Wilborne v. Commonwealth,* 182 Va. 63, 28 S. E. (2d) 1.

In *Wharton's Criminal Evidence,* 11th Ed., page 1292, Section 762, this is said:

" 'Since the introduction into evidence of a physical object is governed by the rules relating to the relevancy and materiality of evidence, it must in some manner be connected with the perpetrator or victim of the crime or with

the crime itself. It follows that in order to justify the admission of this evidence, its identity must be shown to be that of the article or substance, which it purports to be; further, the character of such article or substance must be as purported. However, the prevailing view is that it is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility. * * * .' "

What we have said of the mask applies equally to the two pistols as evidence.

It is difficult to conceive of a more dastardly and brutal crime than that we have here. It might well have merited a much harsher punishment.

The judgment of the court is affirmed.

*Affirmed.*