Present: Hassell, C.J., Keenan, Koontz, Kinser, Agee, and
Goodwyn, JJ., and Lacy, S.J.

ROBERT KAREEM BASHIR DANIELS

v.    Record No. 071065          OPINION BY SENIOR JUSTICE
                                   ELIZABETH B. LACY
                                   February 29, 2008

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this case we consider whether the trial court abused

its discretion in denying a proposed jury instruction on

eyewitness identification.

FACTS

The following events occurred in Norfolk, Virginia.  On

the evening of December 29, 2004, Kay Goldsmith opened her car

door, entered the driver's seat, and, when she reached to

close the door, a tall, slender male approached her.  He

ordered Goldsmith to unlock the doors to the backseat, got

into the backseat, and demanded that Goldsmith drive to a

bank's automated teller machine (ATM), threatening that he

would hurt her if she did not follow his orders.  While

driving to the ATM, Goldsmith looked in the rearview mirror.

The man became angry and pushed her rearview mirror to a

position where she could not see him in the backseat.  When

they reached the ATM, the man lay down in the backseat;

Goldsmith withdrew $100 and gave it to the man, who then gave

her directions to take him to the Huntersville neighborhood. The man got out of the car, grabbed Goldsmith's purse and removed her driver's license, taking it with him and saying that he now knew where she lived. The police later found Goldsmith's driver's license on Hunter Street. Goldsmith was unable to positively identify the perpetrator.

Around midnight the same evening, Jessica Laz was removing bags from the backseat of her parked car when a man jumped out of the bushes a few feet from her. Within a few seconds he was close to her and ordered her not to look at him. The man told Laz to get in the car and if she followed his orders he would not hurt her. The man got into the backseat and leaned forward to move the rearview mirror to a position where Laz could not see him. Laz followed the man's instructions to drive to an ATM. There she withdrew $100 and gave it to the man who then directed Laz through a short drive, and he got out of the car on Hunter Street. The man left the car with Laz's purse, which contained her personal checks showing her parents' telephone number. Laz drove away and reported the crime. With the police, she drove the route she took with the man. Prior to trial, Laz was shown a photo array, and she identified an individual other than the defendant, Robert Kareem Bashir Daniels, as the person who robbed her. At a later date, Laz viewed a physical lineup,

2

and she identified Daniels as the perpetrator. Laz again identified Daniels as her attacker at trial.

During the early hours of December 30, 2004, two men entered the bedroom of Brian Thiede, where he and his girlfriend, Emily C. Bean, were asleep. Holding a knife to Thiede, the men directed Bean to retrieve money from Thiede's wallet. The men took the money and took Bean's cellular telephone before they left the premises.

Later in the morning on December 30, 2004, Marcia Laz, Jessica Laz's mother, answered the phone at her home, and a man demanded her "pin" number, threatening that he knew where she lived. The evidence at trial showed this call was made from Emily Bean's cellular telephone two hours after the Thiede/Bean robbery.

On the evening of February 24, 2005, Kathryn Gresham was exiting her vehicle when a man approached her and ordered her to get back inside the car and to drive him to an ATM. Gresham gave him her keys and her purse, but he forced her into the car and got in the backseat. He again told her to drive to an ATM, and Gresham responded that she had given him the keys. While he was "fumbling" for the keys, Gresham escaped and ran away. Daniels appeared in a police lineup viewed by Gresham, but she identified another man in the lineup as her attacker.

On February 25, 2005, at approximately midnight, Michelle Pereira was leaving her vehicle when a man approached her and ordered her back inside the car. The man got in the backseat, adjusted her rearview mirror so she could not see him, and ordered her to drive to an ATM. After Pereira withdrew $200 from the ATM and gave it to the man, he gave her directions to drop him off on a street that Pereira described as a street with a name starting with "H." Pereira identified Daniels from a photo array and stated she was 70% certain of his identity. At a physical lineup, Pereira identified Daniels as the perpetrator.

Daniels was charged with the abduction and robbery of Kay Goldsmith, Kathryn Gresham, Brian Thiede, Emily Bean, Jessica Laz, and Michelle Pereira, and the burglary of the dwelling of Brian Thiede. Following the presentation of the Commonwealth's evidence, the trial court granted Daniels' motion to strike the abduction charges related to Brian Thiede and Emily Bean, and the trial court dismissed those charges. Daniels asked the trial court to give a jury instruction on eyewitness identification. The Commonwealth argued that the jury instructions addressing reasonable doubt, presumption of innocence, and credibility of witnesses sufficiently covered the same principles presented in the proffered jury instruction. The trial court ruled that the proffered

4

instruction was "duplicative" and "somewhat confusing" and ultimately rejected the instruction.

The jury found the defendant not guilty of the abduction and robbery of Kay Goldsmith and Kathryn Gresham. The jury convicted the defendant of the burglary of the dwelling of Brian Thiede, the robbery of Brian Thiede and Emily Bean, and the abduction and robbery of Jessica Laz and Michelle Pereira. Daniels' appeal to the Court of Appeals was denied by a per curiam opinion. Daniels v. Commonwealth, Record No. 1911-06-1 (April 23, 2007).

## DISCUSSION

In this appeal, Daniels argues, as he did in the Court of Appeals, that the trial court erred in refusing the proffered jury instruction on eyewitness identification. Daniels claims that eyewitness identification was crucial to his convictions, and thus, the general instructions were not adequate.

Courts have long recognized dangers inherent in eyewitness identification testimony. In 1967, the United States Supreme Court observed that

> [t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy."

5

United States v. Wade, 388 U.S. 218, 228 (1967) (footnotes omitted).  Of particular concern has been the circumstances surrounding prosecution presentation of suspects for pre-trial identification.  Id. at 229-230.  Because of the possibility of improper influence at police lineups, whether intentional or unintentional, and the subsequent use of an identification made under such circumstances, the Supreme Court has concluded that a defendant is entitled to counsel for post-indictment prosecution identification procedures, id. at 236-37, and that the trial court should consider certain criteria when determining whether the eyewitness testimony is sufficiently reliable to be admitted in evidence, Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

More recently some state and federal courts, citing continued research on eyewitness identification, have opined that courts should guard against a jury assuming that admitted eyewitness identification testimony is unquestionably reliable and credible simply because it was admitted in evidence. Accordingly, these jurisdictions have allowed a specific jury instruction alerting the jury to the dangers of eyewitness identification testimony both with regard to the circumstances of the identification and the possibility of a sincere mistake in identification.  In some jurisdictions, such instructions are required in cases in which the defendant requests the

6

instruction and identification of the defendant is a central part of the prosecution's case. See State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995), State v. Long, 721 P.2d 483, 492 (Utah 1986). In others, such cautionary instructions are permissible, but not required, if the circumstances warrant. See State v. Guster, 421 N.E.2d 157, 161-62 (Ohio 1981), State v. Kasper, 404 A.2d 85, 100 (Vt. 1979).

We have not adopted a rule like that imposed by Tennessee and Utah which requires a cautionary instruction on eyewitness identification in every case in which it is requested and the identification of the defendant is central to the prosecution's case. Neither have we opined that such an instruction would never be appropriate, nor that a court would abuse its discretion by granting such an instruction. See Lincoln v. Commonwealth, 217 Va. 370, 375, 228 S.E.2d 688, 692 (1976) (if an instruction could have been given, the trial court's refusal to give such an instruction is not necessarily an abuse of discretion). We have affirmed judgments in which the trial court refused to give a cautionary instruction on eyewitness identification because the matters contained in the proposed instructions were covered by other instructions. See Graham v. Commonwealth, 250 Va. 79, 87, 459 S.E.2d 97, 101 (1995), Satcher v. Commonwealth, 244 Va. 220, 256, 421 S.E.2d 821, 843 (1992), Poole v. Commonwealth, 211 Va. 258, 261, 176

S.E.2d 821, 824 (1970), Ives v. Commonwealth, 184 Va. 877, 879, 36 S.E.2d 904, 904-05 (1946); but see Noblett v. Commonwealth, 194 Va. 241, 247, 72 S.E.2d 241, 244-45 (1952), overruled by Poole, 211 Va. at 261, 176 S.E.2d at 824.

In this case, Daniels does not ask us to adopt a rule requiring a cautionary instruction on eyewitness identification. Rather, Daniels contends that such an instruction should have been given in this case because, in addition to the lack of forensic evidence tying him to the crimes charged, the witnesses were unsure of their identifications, were inconsistent in their identifications, and because the instructions given did not inform the jury of the inherent dangers of eyewitness identification testimony or the possibility of the witness making a sincere mistake.

The instruction proffered by Daniels stated:

You have heard testimony of an identification of a
person. Identification testimony is an expression
of belief or impression by the witness. You should
consider whether, or to what extent, the witness
had the ability and the opportunity to observe the
person at the time of the offense and to make a
reliable identification later. You should also
consider the circumstances under which the witness
later made the identification.

The government has the burden of proving beyond a
reasonable doubt that the defendant was the person
who committed the crime charged.

Nothing in this instruction addresses the concept of sincere mistake or the inherent dangers of eyewitness identification

8

testimony.  Accordingly, we do not consider those arguments when considering whether the trial court abused its discretion in refusing this proposed instruction.  Daniel's proposed instruction was refused because, in the trial court's words, it was "duplicative" and "somewhat confusing."  Our review then is limited to whether the trial court abused its discretion in denying the proposed instruction for those reasons.

"When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle."  Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984).  In this case, the jury received instructions on the burden of proof, inconsistent statements, and the witnesses' credibility.  The burden of proof contained in the proposed instruction was fully covered in the instruction given on burden of proof.  The instruction on credibility of witnesses, like the proposed instruction, told the jury to consider the circumstances of the witnesses' observation of the defendant and their ability to identify him.

The proposed instruction also referred to the circumstances surrounding the later identification of Daniels; however, in this case, there was no suggestion of improper

procedures by the police in conducting the lineups or photo arrays. The issues raised by Daniels relating to the circumstances of the identifications at the police station involved inconsistent descriptions and identifications by the witnesses. Consideration of this testimony by the jury was addressed in the instruction on inconsistent statements.

A final element in the proposed instruction was that the "[i]dentification testimony is an expression of belief or impression by the witness." The meaning of this statement is not at all clear and was not explained further by Daniels either at trial or in this Court, nor did the instruction go on to clarify this statement as pertaining to an eyewitness' possible sincere mistake. See, e.g., Long, 721 P.2d at 494-95 n.8.

Accordingly, we conclude that the instructions given "fully and fairly" covered the legal principles addressed in the proposed instruction and therefore the trial court did not abuse its discretion in refusing the proposed instruction. We will therefore affirm the judgment of the Court of Appeals.

Affirmed.