COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Raphael
Argued at Williamsburg, Virginia


ANTONIO LARUE MCEADDY, SR.

v.      Record No. 1689-23-1

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION[*] BY
                                            CHIEF JUDGE MARLA GRAFF DECKER
                                            JANUARY 14, 2025

ANTONIO LARUE MCEADDY, SR.

v.      Record No. 1690-23-1

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge
Gary A. Mills, Judge[1]

Andrew S. Gordon, Senior Assistant Public Defender, for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Antonio Larue McEaddy, Sr., appeals his convictions for robbery by using or displaying

a firearm and use of a firearm in the commission of a felony in violation of Code §§ 18.2-53.1

and -58. He challenges the trial court's refusal to give his proffered jury instruction on witness

identification and contends that this refusal tainted his convictions. McEaddy also appeals the

revocation of his probation for a 2009 conviction, which was based solely on his new robbery

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Sugg presided over the criminal trial in No. 1689-23-1. Judge Gary A. Mills
presided over the revocation hearing in No. 1690-23-1.

and firearm convictions.[2]  We hold the trial court's refusal to give McEaddy's jury instruction was not error.  Accordingly, we affirm his convictions and reject the challenge to the revocation of his probation based on these convictions.

BACKGROUND[3]

On the evening of May 18, 2022, Jacob Wascura was robbed at gunpoint while working at a convenience store.  He later identified McEaddy as the robber.  Wascura initially saw McEaddy enter the store, look around, and leave.  McEaddy returned minutes later when fewer customers were present.  Upon reentering the store, McEaddy approached the counter, displayed a silver gun with a red front sight, and demanded all the money from the cash register.  Wascura complied by removing the tray from the cash register and placing it in front of McEaddy, who took $454 and then left the store.

Surveillance cameras captured the robbery on video recordings admitted into evidence and played for the jury.  The videos clearly depicted McEaddy's appearance, including his eyeglasses, his "bubble-vest jacket," and the distinctive white stitching on the rear pockets of his jeans.  The videos also showed the unusual state of his hair, which was in braids on one side of his head and "undone and open, all over the place," on the other side.  When Wascura saw the

---

[2] On the Commonwealth's motion, in which McEaddy concurred, we previously consolidated these cases for purposes of briefing and argument.  *See McEaddy v. Commonwealth*, Nos. 1689-23-1, 1690-23-1 (Va. Ct. App. Mar. 11, 2024) (order).  Due to the overlapping nature of the issues before this Court, we resolve both appeals in this opinion.

[3] On appellate review of a challenge to the sufficiency of the evidence, this Court "view[s] the record in the light most favorable to the Commonwealth because it was the prevailing party below."  *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020).  In addressing the "trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction," in this case McEaddy.  *See Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)).  Therefore, this opinion sets out all the facts relevant to our analysis of both issues.

robber before and during the robbery, he noticed his hair first because "[h]alf of it was down and half of it was . . . everywhere." He also observed the robber's face, glasses, jacket, and shirt.

Wascura contacted the police immediately after McEaddy left the store. Based on his report, dispatch provided police officers with a description of the robber as "a [B]lack male wearing a vest, no shirt, [and] black jeans," with "one side of his hair . . . braided" and the other side "in an afro." Officer C.J. Dooley saw a man who did not match the robber's description near the parking lot through which the robber was reported to have fled. When Dooley stopped and asked that man if he had seen someone run through the area, the man "pointed . . . down into the wood[ ]line." Dooley looked in that direction and saw Officers Michael Smith and J.W. Taylor about a quarter of a mile away.

At about that same time, Officer Taylor, using his patrol car's spotlight, saw McEaddy five to eight feet away walking near the wood line with his hands in his pockets. McEaddy matched the description of the robbery suspect, a Black male with half of his hair braided and half of his hair "in an afro." Smith similarly described McEaddy as a Black male with his hair half braided and half "just out," wearing a vest with no shirt. As Officer Taylor watched, McEaddy made a throwing gesture toward the wood line. Taylor detained him while other officers searched the wooded area and found a silver handgun with a red front sight.

McEaddy was arrested, and $454 in various denominations of small bills was recovered from his pocket. A police photo of McEaddy shortly after his arrest showed him in a bubble vest, no shirt, and dark jeans with a distinctive white pattern on the back pockets that matched the pockets visible on the pants of the robber in the convenience-store surveillance videos.

Less than thirty minutes after the robbery, police took Wascura to a nearby business where McEaddy was being detained. Wascura identified McEaddy as the robber. At trial, Wascura confirmed that the person he identified just after the robbery had the same "funky hair"

as the robber. According to Wascura, the man was "still wearing a long-sleeved shirt" and glasses but was not wearing a vest. Wascura also identified McEaddy at trial as the robber.

In addition to hearing the testimony of Wascura and law enforcement, the jury viewed the officers' body-worn camera footage of Smith's interaction with McEaddy and the search for the object that McEaddy threw. Officer Dooley identified the firearm offered into evidence as the gun found along the wood line at the scene of McEaddy's arrest, describing it as a silver firearm with a red front sight.

After the parties rested, McEaddy's counsel proffered a jury instruction that largely tracked Virginia's Criminal Model Jury Instruction No. 2.800, a lengthy model instruction addressing a variety of factors that can impact the accuracy of eyewitness identification testimony. The proposed instruction covered possible "biases [and] motives to lie," as well as other factors that might impact the reliability of such an identification. These factors included "whether a weapon was present," "whether the witness and the person committing [the] crime were of different races," and whether the identification could have "result[ed from] outside influences."

McEaddy argued that the instruction was necessary because the robbery victim was a different race than the robber and a cross-racial identification was made in a stressful situation in which the witness was exposed to a firearm.[4] The Commonwealth countered that the instruction

---

[4] McEaddy also noted to the trial court that the identification resulted from what he characterized as a "suggestive police procedure" involving a show-up with only one suspect. *See generally Scott v. Commonwealth*, 68 Va. App. 452, 459 (2018) ("A show-up is a type of out-of-court identification where the police return a potential suspect or victim to the vicinity of the crime for the potential suspect's immediate identification."). "Show-up identifications are not *per se* violative of constitutional rights, . . . and [they] will not be declared invalid unless a review of the totality of the circumstances shows a substantial likelihood of misidentification." *Id.* (alterations in original) (quoting *Dance v. Commonwealth*, 32 Va. App. 466, 472 (2000)). McEaddy did not lodge an independent objection to the show-up in the trial court and does not challenge the show-up itself on appeal.

was unnecessary because it related to witness credibility, an issue already covered by the shorter Criminal Model Jury Instruction No. 2.500, offered by the Commonwealth as Instruction No. 5.[5] Over McEaddy's objection, the trial court denied his proffered instruction and gave the Commonwealth's Instruction No. 5, observing that this instruction "cover[ed] all of those issues" raised by McEaddy. The court advised defense counsel that he could talk about cross-racial identification in closing argument, subject to certain limitations. Defense counsel did not directly mention cross-racial identification in his closing but noted that Wascura was "a [W]hite male" and the robber, like McEaddy, was "a [B]lack male."

The jury convicted McEaddy of robbery with a firearm and use of a firearm in the commission of a robbery. He was sentenced to twenty-three years in prison with five years suspended, for a total active sentence of eighteen years.

The court subsequently held a probation revocation hearing for an earlier robbery offense, of which McEaddy had been convicted and sentenced in 2009.[6] McEaddy pleaded not guilty at the hearing. In support of revocation, the prosecutor introduced a certified copy of the criminal complaint and sentencing order for McEaddy's 2023 convictions, the ones that are the subject of this appeal. McEaddy presented no evidence and argued only as to sentencing. The

---

[5] That instruction explained that the jurors should use their "common sense" to assess witness credibility. It listed various factors they could consider, including the witnesses' "appearance and manner . . . on the stand, their intelligence, their opportunity for . . . observ[ing] the things about which they testified," and any demonstrated "bias," "prior inconsistent statements," or lies about "material fact[s]." The instruction concluded by directing the jurors, "after . . . consider[ing] all the evidence in the case," to choose which parts of the testimony of the various witnesses to "believ[e]" and which to "discard."

[6] As to that 2009 offense, McEaddy had been sentenced to forty years in prison with twenty-five years suspended, to be followed by twenty-five years of supervised probation. He completed fifteen years of active incarceration and was released in 2021, commencing his period of supervised probation at that time. In May of 2022, McEaddy robbed Wascura at the convenience store.

trial court revoked McEaddy's twenty-five-year suspended sentence and resuspended fifteen years.

McEaddy challenges the 2023 convictions and the revocation of his 2009 suspended sentence. He contends that the trial court's refusal to give his proposed jury instruction on cross-racial identification at his 2023 trial for the 2022 offenses requires this Court to reverse those convictions and the revocation of his probation because the revocation was based on the new convictions.

The primary challenge relates to the proposed jury instruction. Although the court instructed the jury on numerous factors relevant to witness credibility (including intelligence, observation, bias, and prior inconsistent statements), McEaddy emphasizes that it failed to mention "the heightened risks associated with identifying a person of another race." *See Walker v. Commonwealth*, 302 Va. 304, 319 (2023). He suggests that, as a result, the court gave the jury "no guidance as to whether the[ jurors] could even consider [the] impact [of such risks] on Wascura's identification."

"Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "However, 'whether a jury instruction accurately states the relevant law is a question of law that [the appellate court] review[s] de novo.'" *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 228 (2013)).

"Courts have long recognized dangers inherent in eyewitness identification testimony," and tragically, "'the annals of criminal law are rife with instances of mistaken identification.'" *Daniels v. Commonwealth*, 275 Va. 460, 464 (2008) (quoting *United States v. Wade*, 388 U.S.

218, 228 (1967)).  Among the factors contributing to such misidentification, this Court has noted "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and psychological phenomena [such] as the feedback factor and unconscious transference."  *Currie v. Commonwealth*, 30 Va. App. 58, 65 (1999) (quoting *Rodriguez v. Commonwealth*, 20 Va. App. 122, 128 (1995)), *quoted with approval in Payne v. Commonwealth*, 65 Va. App. 194, 222 n.22 (2015), *aff'd*, 292 Va. 855 (2016).

Virginia, like "some [other] state and federal" jurisdictions, "allow[s] a specific jury instruction alerting the jury to the dangers of eyewitness identification testimony both with regard to the circumstances of the identification and the possibility of a sincere mistake in identification."  *Daniels*, 275 Va. at 465.  The form such an instruction takes can vary.  Virginia's Criminal Model Jury Instruction No. 2.800 is one such instruction.  Some jurisdictions have made this type of instruction mandatory in certain circumstances, while others treat "such cautionary instructions a[s] permissible, but not required, if the circumstances warrant."  *Id.*  Virginia falls into the latter category.  Our Supreme Court "ha[s] not adopted a rule . . . requir[ing] a cautionary instruction on eyewitness identification in every case in which it is requested and the identification of the defendant is central to the prosecution's case."  *Id.*  Instead, it applies well-established legal standards to the review of each particular case.

The Supreme Court recently affirmed a case in which the trial court gave Criminal Model Jury Instruction No. 2.800.  *See Walker*, 302 Va. at 320.  But the Court made clear that, as with jury instructions generally, "[w]hether to grant such an instruction is a matter of discretion for the trial judge."  *Id.* (citing *Daniels*, 275 Va. at 466).  And consistent with that principle, in *Watson v. Commonwealth*, 298 Va. 197, 203-04, 210-11 (2019), the Supreme Court affirmed the trial court's *denial* of the defendant's request for Criminal Model Jury Instruction 2.800, holding the trial court "did not abuse its discretion in refusing the instruction."  The Court reasoned that

the trial court "instructed the jury on its role as the judges of the facts, the credibility of the witnesses, and the weight of evidence," as well as "on the presumption of innocence and the Commonwealth's burden of proving appellant's identity beyond a reasonable doubt." *Id.* at 210. It concluded that "[t]hese granted instructions addressed [the defendant's] essential defense theory that [the] eyewitness testimony lacked credibility." *Id.*

Such reasoning is entirely consistent with existing law. "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Daniels*, 275 Va. at 466 (quoting *Stockton v. Commonwealth*, 227 Va. 124, 145 (1984)). A defendant is not entitled to have the court use his preferred language to instruct the jury. *See Watson*, 298 Va. at 209-10. The record before us here makes clear that the instruction given by the trial court, based on Criminal Model Jury Instruction No. 2.500, adequately addressed the issue of the eyewitness's identification of McEaddy. That, along with the other instructions, sufficiently informed the jury of its duties under the applicable law.

We recognize that "there [may be] times when . . . carefully tailored jury instructions will assist the court or the jury in sifting through a sincere but perhaps mistaken eyewitness identification." *Id.* at 211 (McCullough, J., concurring). But the trial court did not abuse its discretion in concluding that this case is not one of those times. Nothing in the record indicates that an inaccurate cross-racial identification was likely here. And multiple facts suggest otherwise, including McEaddy's distinctive, half-braided hair style, which made his appearance memorable. Wascura had the opportunity to observe McEaddy twice, first as McEaddy crossed the street and entered the store before leaving again, and then when he reentered the store and approached the counter in a very matter-of-fact manner to carry out the robbery. The mere fact that McEaddy and his victim were of different races does not mean that he was entitled to a jury

instruction on cross-racial identification and that the trial court abused its discretion in refusing to give such an instruction. *See id.* at 210. This is particularly true when viewed in light of the actual instructions to the jury and the facts in this case.

Valid concerns about eyewitness identification in general notwithstanding, it is well established that "a conviction . . . may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)); *cf. Hamilton v. Commonwealth*, 279 Va. 94, 104 (2010) (affirming a conviction where a single eyewitness to a mob attack testified that the defendant's actions toward the victim reflected "something other than rendering assistance," contradicting the defendant's theory of the case); *see also Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (recognizing that a fact finder evaluating witness credibility can "choos[e] between competing accounts offered by different witnesses" as well as resolve "conflicts in a single witness'[s] testimony"). Nonetheless, "[c]orroborating evidence tends to confirm and strengthen the testimony of the witness." *Rice v. Charles*, 260 Va. 157, 166 (2000) (quoting *Hereford v. Paytes*, 226 Va. 604, 608 (1984)).

The record here contains a significant amount of corroborating evidence, including the video record of the robbery and the circumstances surrounding the search by law enforcement for the robber. Multiple security cameras recorded the entire robbery and did so with remarkable clarity. The body-worn camera footage of several police officers captured its aftermath. Taken together, these videos clearly depict McEaddy as the robber and strongly corroborate Wascura's identification of him. To the extent McEaddy contends that the eyewitness identification was unreliable, the jury was able to assess the credibility of that identification by comparing McEaddy's appearance, based on both the descriptions of Wascura and the other witnesses and McEaddy's appearance in court, to the appearance of the perpetrator in the video footage. The

- 9 -

jury, having viewed the video evidence, reasonably could determine that the recorded footage corroborated Wascura's and law enforcement's identification testimony, based on the similarities between the clothing, height, build, glasses, and hairstyle of McEaddy and that of the perpetrator. *See generally Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (holding that the requirement of appellate deference to the factfinder "applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of . . . video evidence'" (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022))).

Other evidence further bolstered Wascura's identification and pointed to McEaddy's guilt. Wascura testified that McEaddy was armed with a silver handgun equipped with a red sight. And McEaddy discarded a firearm matching that description in the nearby tree line less than ten minutes after the robbery. Moreover, Wascura testified that the sum of "about 454-ish dollars" was taken from the cash register during the robbery. That was the exact amount of money found in McEaddy's pocket when he was apprehended shortly thereafter.

Nothing in this record reflects that Wascura's identification of McEaddy as the robber was impacted by cross-racial identification issues or in any way inaccurate. Nor does it indicate that the jury instruction on witness credibility given by the court was insufficient to address McEaddy's concerns. Consequently, the trial court did not abuse its discretion by refusing McEaddy's proffered instruction.[7]

McEaddy also argues that the trial court erred by finding the evidence sufficient to revoke his suspended 2009 sentence. He acknowledges that "the entire basis" for the revocation was "the new conviction[s] for robbery and use of a firearm." He argues that if this Court "reverse[s]

---

[7] We conclude that addressing the refusal of the instruction on the merits is the best and narrowest ground for resolving this appeal. *See generally McDaniel v. Commonwealth*, 73 Va. App. 299, 317 n.6 (2021) (affirming the challenged convictions based on a merits analysis as the best and narrowest ground rather than merely assuming error and addressing whether any such error was harmless).

one or both of [those new] convictions, . . . no basis at all [will remain] for a violation of [his] suspended sentence[]." Conversely, he expressly concedes that the outcome of his challenge to the probation revocation depends on this Court's ruling in the appeal involving his new convictions for the 2022 offenses.[8] We do not consider the merits of the challenge to the probation revocation because, as McEaddy notes, the fate of "the underlying conviction[s] . . . determine[s] the outcome of the appeal of the revocation proceeding." *Patterson v. Commonwealth*, 12 Va. App. 1046, 1049 (1991). Based on this Court's ruling affirming the new convictions, we do not separately address McEaddy's very limited challenge to the revocation of probation for his 2009 conviction and sentence. *See id.* (holding that the appeal of a revocation proceeding in such circumstances is "without merit . . . or . . . moot").

CONCLUSION

The trial court did not abuse its discretion in denying McEaddy's proffered jury instruction at his trial for the 2022 offenses. Based on our ruling affirming those convictions, we hold that his challenge to the revocation of probation for his 2009 conviction is either without merit or moot. We therefore affirm the trial court's judgment as to both appeals.

*Affirmed.*

---

[8] McEaddy suggests that if this Court concludes he "failed to preserve th[is] issue" for appeal, it should apply the ends-of-justice exception to Rule 5A:18 to reach the issue. We assume without deciding that this assignment of error was preserved. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (holding that where an appellate court's ability to review an issue is in doubt, it may "'assume without deciding' that the issue can be reviewed provided that this permits [the Court] to resolve the appeal on the best and narrowest ground[]").