COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Causey and Bernhard

WONDWOSSEN KASSU

MEMORANDUM OPINION*

v.       Record No. 0962-24-4                                          PER CURIAM
                                                                                          AUGUST 26, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

(Lauren E. Brice, Assistant Public Defender; Virginia Indigent
Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.

Following a jury trial, the court convicted Wondwossen Kassu (appellant) of three counts of

malicious wounding, one count of possession of cocaine, and one count of possession of

phencyclidine (PCP). Appellant contends that the court erred by refusing his proffered jury

instruction on eyewitness identification and by denying his motion to set aside the verdict or

"reopen [the] evidence." After examining the briefs and record, the panel unanimously holds that

oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, we state the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party [below]." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). "[W]e regard as true all credible evidence

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022).

On the night of May 21, 2019, Saad Laouaouda was in an Arlington park talking with Rizanne Netha and Ahmed Laroussi when appellant approached them. Laouaouda and Netha had been drinking. Despite the darkness, Laouaouda recognized appellant from seeing him at the park the previous week. Netha had also seen appellant at the park many times, had interacted with him, and given him money.

As appellant walked up to the group, he repeatedly asked, "Is there a problem over here?" Appellant was oddly dressed for late May, wearing a winter coat and a ski mask. Laouaouda stood up and said hello, and appellant walked up to Netha and, without provocation, stabbed him. He then stabbed Laouaouda twice and stabbed Netha again. Both men did not realize that they had been stabbed until they saw blood. Appellant also stabbed Laroussi in the back.

Laouaouda ran to a nearby restaurant to call for help. As he ran, he heard Netha screaming, "Stop stabbing me." Police and ambulances arrived at the scene. At the hospital, Laouaouda learned that he had been stabbed once in his arm and once in his chest, which struck his rib bone. Netha was also treated at the hospital; he suffered three stab wounds, two in the arm and one in his torso.

Arlington County Police Officer Richard Myers found Laroussi, who was bleeding from his right side, outside the park. Laroussi gestured towards the park and told the police, "He's over here." The police followed Laroussi into the park where he pointed out appellant, who was walking away. Laroussi identified appellant as the attacker. The police arrested and searched appellant, and they found two knives in his jacket pocket, a small amount of crack cocaine, and a glass vial containing PCP. DNA analysis of appellant's jacket and ski mask showed Netha's DNA in a blood stain on the jacket.

At the conclusion of the evidence, appellant offered a jury instruction on eyewitness

identification.[1]  The Commonwealth objected to the proffered instruction, in part because it

---

[1]     You should evaluate the testimony of an eyewitness who identified
the defendant as the person he saw [committing the crime; involved
in the crime] in the same manner as you would for any other witness,
including any biases or motives to lie.  Additionally, even if you
believe the witness was trying to tell the truth, you must still decide
whether the witness was accurate about the identification or instead
made an honest mistake.  In weighing such testimony, you may
consider the following:

Whether the witness had an adequate opportunity to observe the
person [committing the crime; involved in the crime]; circumstances
such as [the amount of time the witness had to observe the person
(committing a crime; involved in the crime); the distance between
the witness and the person (committing the crime; involved in the
crime); lighting conditions; weather conditions; obstructions; how
closely the witness was paying attention to the person (committing
the crime; involved in the crime); whether the witness knew a crime
was being committed; the extent to which the person's features were
visible and undisguised; whether a weapon was present that may
have affected the attention of the witness], and any other
circumstances you believe are important.

You may consider whether the witness had the ability to observe the
person [committing the crime; involved in the crime].  In that regard
circumstances you may consider include [the witness's intelligence;
whether the witness was stressed or frightened, fatigued, injured, or
under the influence of drugs or alcohol at the time the witness made
the observations; whether the witness had impaired vision which was
uncorrected at the time the witness made the observations; whether
the witness and the person (committing a crime; involved in the
crime) were of different races, because some witnesses may have
greater difficulty in accurately identifying members of a different
race], and any other circumstances you believe are important.

You may consider whether the witness's identification of the
defendant was the product of the witness's own memory or to what
extent it was may have been the result of outside influences.
Circumstances you may consider include [whether the witness ever
gave a description of the person who (committed the crime; was
involved in the crime) and, if so, how that description compares to
the defendant; whether the witness knew or had seen the defendant
prior to witnessing the crime; the amount of time that passed between
the crime and the witness's later identification of the defendant;

contained "surplus" language. In rejecting appellant's proffered instruction, the court noted that the jury already had "a credibility instruction that addresses the factors to determine a witness's credibility," and appellant's instruction "addresses the same factors." The court also held that the instruction "includes factors not in evidence, [and] thus it's confusing considering the credibility instruction." Finally, the court found that the instruction included parts "that really would be argument and not a proper instruction by a court."

Instead, the court instructed the jury as follows:

> You are the judges of the facts, the credibility of the witnesses and the weight of the evidence. You may consider the appearance and manner of witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.

> You may not arbitrarily disregard believable testimony of a witness. However, after you have considered all of the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper.

> You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances in the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

---

> whether the witness made the identification after being exposed to any outside influences or information, which may include any opinions, descriptions, or identifications given by others, photographs, newspaper accounts, televised or online news stories, or any other outside information or influences; whether the witness was ever presented with the defendant and failed to identify the defendant as the person who (committed the crime; was involved in the crime) or previously identified a different individual as the person who (committed the crime; was involved in the crime), whether the witness was able to identify other participants in the crime], and any other circumstances you believe are important.

The court also instructed the jury: "The Commonwealth bears the burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the crime charged. If the Commonwealth has not met this burden, you must find the defendant not guilty." During closing argument, defense counsel asserted that appellant was not the person who stabbed the three men and challenged the witnesses' identification of appellant. The jury found appellant guilty.

After trial, the court granted appellant's counsel's motion to withdraw. New counsel moved to set aside the verdicts, or in the alternative, reopen the evidence. Appellant argued that the verdicts were obtained in violation of his constitutional rights "to due process, a fair and impartial jury, confrontation, effective assistance of counsel and other rights and privileges." He argued that the "jury never learned important information regarding [his] serious mental illness" which "would have negated the Commonwealth's proof of malice, resulting in acquittals for the indicted degree of assault offenses."

At the hearing on the motion, defense counsel argued that "it's crystal clear that this offense was a product of serious mental illness." He explained that appellant suffers from schizophrenia and various related disorders. Counsel acknowledged that a forensic psychologist had concluded that appellant would not be eligible for an insanity defense because "even within that state of psychosis he knew that stabbing people was wrong." But he asserted that evidence about appellant's mental illness would have created a defense against malicious wounding. The court denied the motion to set aside the verdicts or reopen the evidence.

ANALYSIS

I.

Appellant argues that the court erred by denying his proffered jury instruction addressing eyewitness identification. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the

evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting

*Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "We review a trial court's

decisions in giving and denying requested jury instructions for abuse of discretion." *Id*. at 675.

"[W]hether a jury instruction accurately states the relevant law is a question of law that we

review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v.*

*Commonwealth*, 292 Va. 855, 869 (2016)). "And in deciding whether a particular instruction is

appropriate, we view the facts in the light most favorable to the proponent of the instruction."

*Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Cooper v. Commonwealth*, 277

Va. 377, 381 (2009)).

Appellant sought to instruct the jury on eyewitness identification using a note contained

in the Criminal Model Jury Instruction manual, No. 2.800.[2] The court found that the proposed

instruction included factors not applicable to appellant's case and the facts at issue were covered

by other instructions. The court further held that portions of the instruction were argumentative

"and not a proper instruction by a court." Indeed,

> [w]hile it may be appropriate during closing argument for each
> *party* to focus the jurors' attention on the evidence it prefers them
> to consider during their deliberations, it is not appropriate for the
> *court* to do so in a jury instruction because, under the law of
> Virginia, the jury is free to weigh the evidence how it chooses.

*Payne*, 292 Va. at 871.

In *Daniels v. Commonwealth*, 275 Va. 460 (2008), the Supreme Court acknowledged that

"[c]ourts have long recognized dangers inherent in eyewitness identification testimony." *Id*. at

464.

> [S]ome state and federal courts, citing continued research on
> eyewitness identification, have opined that courts should guard

---

[2] The following caveat precedes the proposed instruction: "The court and practitioners should be mindful that this instruction has not been approved by the Court of Appeals of Virginia or the Supreme Court of Virginia." Model Jury Instrs.—Crim. No. 2.800.

against a jury assuming that admitted eyewitness identification testimony is unquestionably reliable and credible simply because it was admitted in evidence. Accordingly, these jurisdictions have allowed a specific jury instruction alerting the jury to the dangers of eyewitness identification testimony both with regard to the circumstances of the identification and the possibility of a sincere mistake in identification.

*Id.* at 465. Nonetheless, the Court found that, in Virginia, "[w]e have not adopted a rule . . . which requires a cautionary instruction on eyewitness identification in every case in which it is requested and the identification of the defendant is central to the prosecution's case." *Id.*

In *Payne*, 292 Va. 855, the Supreme Court considered whether the trial court erred in refusing a proffered jury instruction on eyewitness identification modeled upon an instruction discussed in *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). The Court observed that

the very specificity of [the] instruction counseled against its use, in the form and using the precise language he proffered. The proffered instruction would have focused the jury's attention on four enumerated factors, thereby suggesting that those four factors were exclusive or at least entitled to special consideration or undue weight.

*Payne*, 292 Va. at 871. The Court reaffirmed the holding in *Daniels* that it is within the trial court's discretion to deny an instruction on eyewitness identification. *Id.* at 872.

"When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels*, 275 Va. at 466). Here, the given instructions informed the jury of their role in determining witness credibility, the factors they could consider, and that the Commonwealth was required to prove that appellant was the perpetrator beyond a reasonable doubt. The trial court properly concluded that the proffered instruction could confuse the jury and that the granted instructions correctly stated the applicable law. Accordingly, we find the court did not abuse its discretion in refusing appellant's eyewitness identification instruction.

II.

Appellant asserts that the court erred by denying his motion to set aside the verdict or reopen the evidence. He argues that his "case presents the 'exceptional case' that should have resulted in a granted motion to set aside the verdict."

"Rule 3A:15(c) permits a trial court to 'grant a new trial if it sets aside the verdict' based on after-discovered evidence." *Bondi v. Commonwealth*, 70 Va. App. 79, 92 (2019). "A motion for a new trial based on after-discovered evidence is a 'matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented.'" *Id.* (quoting *Orndorff v. Commonwealth*, 279 Va. 597, 601 (2010)). "We will not reverse the court's decision except for an abuse of discretion." *Id.*

> To warrant a new trial, a party must show that the after-discovered evidence:
>
> "(1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial."

*Id.* (quoting *Odum v. Commonwealth*, 225 Va. 123, 130 (1983)). "The moving party must establish each of these mandatory criteria." *Commonwealth v. Tweed*, 264 Va. 524, 529 (2002).

Here, appellant failed to demonstrate that the evidence of his mental illness was discovered after trial. He asserts that "[w]hile the records of [his] extensive history with mental health treatment existed prior to trial, there was no reason for trial counsel to believe that those records would be relevant to any issue in the guilt phase of trial." Appellant explains that because he was arrested in 2019 before the enactment of Code § 19.2-271.6, which permits the introduction of some mental health evidence during the guilt phase of trial, his counsel had "no reason to believe that [appellant]'s mental health evidence would be relevant to the guilt phase of

the trial given that the defense was not one of insanity." Appellant, however, was tried in February 2022, after Code § 19.2-271.6's effective date of July 1, 2021, and thus he could have chosen to present mental health evidence. Further, the evidence was clearly available before trial and was not after-discovered. Appellant therefore has failed to demonstrate he was entitled to a new trial.

"Motions to reopen an evidentiary record or to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). "A litigant's 'right to relief on such rehearing depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified.'" *Id.* (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)). "Without valid excuse, no party who has had his day in court can reopen the hearing . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made." *Id.* at 109-10 (alteration in original) (quoting *Holmes v. Holmes*, 7 Va. App. 472, 482 (1988)).

> This "valid excuse" standard typically requires a showing that the party has exercised due diligence in making the best of prior opportunities to address the issue, has obtained newly-discovered evidence that could not have been previously discovered during a reasonably thorough investigation, or has recently learned of an unforeseeable judicial ruling affecting the issue previously decided by the court.

*Id.* at 110 (citation omitted).

Here, the evidence was not newly discovered and could have been used at trial had appellant chosen. Instead, he argued to the jury that he was not the perpetrator rather than acknowledge the crime and claim that, because of his mental illness, his acts were not malicious.

As the court noted, appellant asserts a claim of ineffective assistance of counsel, which cannot be brought on direct appeal. "Claims raising ineffective assistance of counsel must be

asserted in a habeas corpus proceeding and are not cognizable on direct appeal." *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001). *See also* 1990 Va. Acts ch. 74 (repealing Code § 19.2-317.1).

Accordingly, we find no abuse of discretion in the court's refusal to reopen the evidence.

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*